UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JILLIAN MECHANICAL CORPORATION,

                    Petitioner,

               -against-

UNITED SERVICE WORKERS UNION
LOCAL 355, INTERNATIONAL UNION OF
JOURNEYMEN AND ALLIED TRADES,
UNITED WELFARE FUND--WELFARE AND
SECURITY DIVISION--AND JOINT
APPRENTICESHIP AND TRAINING FUND,

                    Respondents.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-0042 (ADS)(ARL)

**APPEARANCES:**

**Gutman & Gutman, LLP**
*Attorneys for the Petitioner*
The Gutman Building
19 Roslyn Road
Mineola, New York 11501-4521
    By: Andrew E. Gutman, Esq., Of Counsel

**O'Dwyer & Bernstien, LLP**
*Attorneys for the Respondents*
52 Duane Street
New York, NY 10007
    By: Zachary Richard Harkin, Esq., Of Counsel

**SPATT, District Judge**.

      This case arises from a dispute involving an alleged failure to make timely and full contributions to an employee benefit plan administered by the United Service Workers Union Local 355 ("Local 355"), the International Union of Journeymen and Allied Trades ("IUJAT"), and the United Welfare Fund—Welfare and Security Division and Joint Apprenticeship Training Fund ("JATF") (collectively, the "Respondents"), on behalf of the employees of Jillian

Mechanical Corporation ("Jillian"), a member of the Long Island and New York Mechanical Contractors Association ("the Association").

Presently before the Court is a motion to dismiss the complaint filed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) by the Respondents. For the reasons set forth below, this motion is granted.

## I. BACKGROUND

The Respondents are employee benefit plans under the Employee Retirement Income Security Act ("ERISA"). Jillian is an employer under the National Labor Relations Act ("NLRA").

Local 355 and the Association are signatories to a series of collective bargaining agreements ("CBA"). On February 1, 2005, by an assumption agreement, Jillian relinquished its bargaining rights to the Association and agreed to be bound by the July 1, 2002 to June 30, 2005 Association Collective Bargaining Agreement (the " 2002 CBA"), and any and all successor CBAs and other agreements between the Association and Local 355. The assumption agreement states, in relevant part:

> Agreement, effective this 1st day of February, 2005 by and Local 355, United Service Workers, International Union of Journeyman and Allied Trades, ("Union") Jillian Mechanical Corp. ("Employer"). WHEREAS, the parties hereto acknowledge that there are presently a Collective Bargaining Agreement between the Union and the Long Island and New York Mechanical Contractor's Association ("Association") dated for the period July 1, 2002 through to June 30, 2005. In addition, the Employer recognizes there are or will be certain amendments, extensions, and renewals to the Association Agreement (hereinafter referred to as the "Association Collective Bargaining Agreement") to be negotiated on behalf of the Employer by the Association. . . .
>
> 5. The Employer agrees that the Association shall, on behalf of the Employer, negotiate successor Collective Bargaining Agreements, amendments, renewals, and extensions of the Collective Bargaining Agreements and the Employer agrees to be bound by any and all amendments, renewals and/or extensions of the above referenced Association Collective Bargaining Agreements unless and until this

2

Agreement is properly terminated by either the Employer or the Union in accordance with the renewal and/or Termination Provisions of the Association Collective Bargaining Agreement.

(Exhibit A.)

One of the successor CBAs was the 2008 CBA, effective July 1, 2008 through June 30, 2011, signed by the Association and the Union (the "2008 CBA"). It begins as follows:

AGREEMENT, made this 1st day of July, 2008 by and between UNITED SERVICE WORKERS UNION, IUJAT, LOCAL 355, hereinafter referred as the "Union"…and the LONG ISLAND AND NEW YORK MECHANICAL CONTRACTORS' ASSOCIATION, INC…. for and on behalf of those present and future members of the Association who individually authorized the Association to act as their bargaining agent, each of which is referred to as an "Employer."

(Exhibit B.) Pursuant to Article 14 of the 2008 CBA, Jillian agreed to contribute $0.80 per hour to the JATF for each bargaining unit employee.

Article 8 of the 2008 CBA contains an arbitration clause requiring Jillian and Local 355 to submit to binding arbitration for all disputes arising from the agreement. It states in relevant part:

All disputes, complaints, controversies, claims and grievances arising between the Employer [Jillian] and the Union [Local 355], or any group of employees covered by this Agreement with respect to, concerning or growing out of the interpretation, operation, application, performance or claimed breach of any of the terms and conditions of this Agreement shall be adjusted in accordance with the following procedure. . . .

b) The parties designate Eugene Coughlin, J.J. Pierson, and Elliott Shriftman as permanent arbitrators to alternatively hear and decide every other grievance, beginning with Arbitrator Coughlin. The decision of the arbitrator shall be final and binding upon the parties and shall be full enforceable in law, or in equity and the parties expressly consent that an award may be enforced in the Supreme Court of New York, County of Queens or in any court with jurisdiction over the parties.

(Exhibit B.)

In addition, Article 15(q) of the 2008 CBA indicates that Jillian is also bound by all of the terms and conditions contained in the JATF Trust Fund Agreement ("Trust Agreement") that created and governed the Respondent funds. (Exhibit C.) Under the terms of the Trust Agreement, is the following:

> When the Fund undertakes proceedings to recover Employer contributions, there are administrati[ve] burdens, financial burdens, and reallocation of staff resources which are damages which are difficult to quantify. Thus, where the Fund institutes an action to recover Employer contributions, such Employer is liable for the following: (i) the unpaid contributions, (ii) legal rate of interest on the unpaid contributions, (iii) an amount equal to either (a) the legal rate of interest on the unpaid contributions, or (b) liquidated damages in the amount of 20% of the contributions due, (iv) reasonable attorney's fees and costs of the action, and (v) all costs of collection including but not limited to fees incurred for auditing in connection with determining delinquent status.

(Exhibit C, ¶ 2.)

In April 2011, Jillian advised Local 355 that it had terminated its relationship with the Association, and, therefore, wanted to conduct direct negotiations with Local 355 for a successor agreement to the 2008 CBA. (Exhibit D.) However, these negotiations met an impasse and no further agreement was reached. On October 19, 2011, Local 355 disclaimed interest in representing Jillian's employees, effective August 1, 2011.

On December 27, 2011, the parties began a dispute over the correct amount of employee benefit contributions Jillian owed under the previous 2008 CBA. Originally, the Respondents sought to recover contributions owed from July 2008 through August 2011, but presently they only seek to recover contributions from July 2008 through June 2011. The Respondents allege that Jillian failed to remit proper contributions to JATF. As a result, the Respondents demanded binding arbitration pursuant to the 2008 CBA.

On January 3, 2012, Jillian commenced a Special Proceeding in New York State Supreme Court to stay arbitration pursuant to New York Civil Practice Law and Rules § 7503.

The Petition requested an order of the State Supreme Court to permanently stay and enjoin the Respondents from proceeding with and conducting an arbitration hearing. On January 4, 2012, the Respondents removed the proceedings to this Court. On February 1, 2012, the Respondents filed the present motion to dismiss for failure to state claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

As a threshold matter, before considering the merits of the case, the Court must assess whether jurisdiction is proper. Jillian argues that federal jurisdiction under the Employee Retirement Income Security Act ("ERISA") statute, 29 U.S.C. § 1132(e)(1), is improper because the 2008 CBA at issue was "expressly nullified and declared void" by Jillian "prior to the demand for arbitration." (Petitioner Mem. of Law, at 3). However, the fact that the CBA is no longer valid and enforceable does not deprive this Court of jurisdiction to determine whether there was a valid agreement to arbitrate this particular dispute. The quarrel concerns alleged unpaid contributions that were incurred during the time period covered by the 2008 CBA. The fact that the agreement was expired when the demand was made and this suit was initiated does not affect this Court's jurisdiction. See Mason Tenders Dist. Council Welfare Fund v. ITRI Brick and Concrete, No. 96 Civ. 6754, 1997 WL 678164, at *4 n.4 (S.D.N.Y. Oct. 31, 1997) ("none of those cases hold that the district court lacks subject matter jurisdiction over an ERISA action to collect contributions for the time period covered by the CBA merely because the collective bargaining agreement has expired by the time a lawsuit is instituted.").

### A. The Legal Standard

For purposes of deciding the instant motion, the Court will do as a number of other courts have done and construe the Respondents' motion to dismiss as a motion to compel arbitration.

In order to grant a motion to compel, the moving party must meet the summary judgment standard pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P. 56"). See Hines v. Overstock.com, Inc., 380 Fed App'x 22, 24 (2d Cir. 2010) ("'In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment.'") (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)); see also McAllister v. Ct. Renaissance Inc., No. 10 Civ. 1488, 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011); Env. Energy Services, Inc. v. Cylenchar Ltd., No. 11 Civ. 0039, 2011 WL 4829851, at *2 (D. Conn. Oct 12, 2011); Brown v. St. Paul Travelers Companies, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) ("'[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability,' regardless of how the party that favors arbitration styles its motion."); Santos v. GE Capital, 397 F. Supp. 2d 350, 353 (D. Conn. 2005) ("When a motion to dismiss is premised upon a request to compel arbitration, however, the Court 'applies a standard similar to that applicable for a motion for summary judgment.'") (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003).

      It is well-settled that summary judgment under Fed. R. Civ. P. 56 is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46

F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted). "[T]he trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to decid[e] them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Id. at 1224.

On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists. Roller v. Centronics Corp., No. 87 Civ. 5715, 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989). This Court must first determine whether there is a valid agreement to arbitrate between the parties. Id. If there is, the Court must then determine whether the particular dispute falls within the scope of arbitration clause. Unique Woodworking, Inc., v. N.Y. City Dist. Council of Carpenters' Pension Fund, No. 07 Civ. 1951, 2007 WL 4267632, at *10 (S.D.N.Y. Nov. 30, 2007). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." Id.

7

The Court must keep in mind certain public policy concerns when deciding whether to compel arbitration. Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. See Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). The Court notes that the Federal Arbitration Act reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT & T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011) (internal quotation marks and citations omitted). "[T]he FAA was enacted to replace judicial indisposition to arbitration, and is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks and citations omitted). In fact, the Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted).

**B. As to Whether the Respondents' Motion to Compel Arbitration Should be Granted**

In order to resolve the pending motion, the Court must decide three issues: the enforceability and validity of the 2008 CBA, which includes the agreement to arbitrate; the scope of the arbitration clause; and whether the current dispute falls within the arbitration agreement. See The Tile Setters and the Tile Finishers Union of New York and New Jersey, No. 06 Civ. 5211, 2009 WL 922021, at *8 (E.D.N.Y. March 31, 2009) ("Beyond the gateway questions of whether the parties have agreed to arbitrate under the agreement, and the scope of that

8

agreement, questions relating to the procedures for arbitration and substantive defenses to the arbitration are for the arbitrator to decide, not the court.").

1. **As to the Agreement to Arbitrate**

This Court has the authority to determine whether there is an agreement to arbitrate between the parties. Adams v. Suozzi, 433 F.3d 220, 226 (2d Cir. 2005); see AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). The parties cannot point to any provision in the CBA that "clearly and unmistakably" assigns the question of arbitrability to the arbitrator in the first instance.

Jillian's principal argument against arbitration is that Local 355's disclaimer of interest on October 19, 2011, effective August 1, 2011, rendered the entire 2008 CBA null and void as a matter of law. (See Petitioner's Mem. of Law, at 4-5.) As such, Jillian sought to stay arbitration in state court pursuant to CPLR §7503(b) and retains this argument on the ground that there is no agreement currently in place to arbitrate the instant dispute between the parties.

As a preliminary matter, if the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist. See Specht v. Netscape Communications Corp., 306 F.3d 17, 26 (2d Cir. 2002); Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972). Generally, when the parties disagree on whether an agreement was ever reached, a court must decide that question as an initial matter. Telenor Mobile Comm. AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009). The Second Circuit has held that "questions about whether a contract was ever made . . . are

9

presumptively to be decided by the court even without a specific challenge to the agreement to arbitrate." Id.

Here, there is no indication that the CBA was not initially valid in its creation and execution. Neither party makes any arguments in that regard. Moreover, Jillian advised the Respondents in April 2011 that it had terminated its relationship with the Association, and, therefore, wished to conduct negotiations directly for a successor agreement to the 2008 Association CBA. (Exhibit D). In this letter, Jillian stated that it would "not agree to be bound by any terms which may be consented to [by] the Association after June 30, 2011." This indicates that Jillian considered itself to be a party to the 2008 Association CBA that was effective from July 1, 2008 though June 30, 2011.

Second, putting aside whether the CBA is now expired, the validity of the arbitration clause is unchallengeable. That is, only if a contract is "void" can a party challenge the enforceability of an arbitration clause without alleging a particular defect in that clause. See Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005) (discussing the difference between a "void" and "voidable" contract pertaining to arbitration clauses). A contract is void in its entirety at the execution of the agreement only under extraordinary circumstances, such as fraud. See, e.g., Hetchkop v. Woodlawn at Grassmere, Inc., 166 F.3d 28 (2d Cir. 1997) (finding that fraud in the execution may cause an alleged agreement to be completely void). While the Petitioner makes the claim that the CBA is "void", it is actually contending that the CBA has simply expired. Thus, Jillian does not make any substantive allegation that the CBA is void or that there is a particular defect in the arbitration clause itself.

Third, and most importantly, the timing of the dispute does not mean that the agreement to arbitrate in the 2008 CBA is without force. While it is true that "[a]rbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," even where the agreement has expired, the arbitration duty may endure if the dispute at issue is "over an obligation arguably created by the expired agreement." Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, 430 U.S. 243, 252, 97 S. Ct. 1067, 51 L. Ed. 2d 300 (1977). This concept was explained by the Supreme Court as follows:

> Our prior decisions have indeed held that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so. Adherence to these principles, however, does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract. Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term. Yet it could not seriously be contended in either instance that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum.

Id. at 250-51. This is because an "extensive obligation to arbitrate [a] contract . . . [is] not consistent with an interpretation that would eliminate all duty to arbitrate as of the date of expiration." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 204, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991).

Although Nolde has been discussed at length and criticized since the decision was rendered in 1977, in Litton Financial Printing Div. v. NLRB, 501 U.S. 190, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991), the Court clarified that a post-expiration dispute remains arbitrable, but only if the dispute has its real source in the collective bargaining agreement. Thus, while there no longer exists a presumption of the arbitratability of post-expiration grievances, see Cadillac Indus., Inc. v. Amalgamated Clothing & Textile Workers Union, 775 F. Supp. 30, 32 (D. P.R.

1991), a post-termination dispute will be subject to an expired agreement's arbitration clause where: (1) the dispute "involves facts and occurrences that arose before termination;" (2) "where an action taken after expiration infringes a right that accrued or vested under the agreement;" or (3) "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the agreement." Litton, 111 S. Ct. at 2225; see Tile Setters, 2209 WL 922021, at *8 (finding that the presumption in favor of arbitration is strong enough "that in certain circumstances the courts enforce a duty to arbitrate after the CBA containing a broad arbitration clause has expired."). Therefore, it is well settled that "[t]he expiration of a collective bargaining agreement does not automatically terminate the parties' contractual obligation to arbitrate claims that arise *under* the collective bargaining agreement." New York's Health and Human Service Union, 1199/SEIU, AFL-CIO v. NYU Hosps. Ctr., No. 02 Civ. 9165, 2003 WL 1475777 (S.D.N.Y. Mar. 20, 2003) (quoting Local 807, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Brink's, Inc., 744 F.2d 283, 286 (2d Cir. 1984)).

When making a determination as the arbitrability of labor disputes, courts should not decide the merits of a grievance unless it is impossible to determine the arbitrability of a dispute without an analysis of the terms of the collective bargaining agreement. See Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991). Here, there is no need to examine the merits of the grievance. This matter is arbitrable.

The alleged failure to remit proper payments to the employee benefit fund arose while the 2008 CBA was in effect between the parties to this lawsuit. Thus, the obligation to make benefit contributions involves facts and occurrences that arose before termination. See Raymond C. Dean & Co. v. Gerald M. Sullivan, No. 95 Civ. 1116, 1996 WL 631724, at *4 (N.D. Ill. Oct. 29, 1996) (finding that because the dispute involved the issue of whether the petitioner had properly

met his obligation to make contributions to the funds under a CBA before it was repudiated, the dispute was arbitratable); see also Halsey Drug Co., Inc. v. Drug, Chem. Cosmetic, Plastics, and Affiliated Indus. Warehouse Employees, Local 815, 192 F. Supp. 2d. 192 (S.D.N.Y. 2002) ("Even if the CBA had expired by the time Local 815 filed its grievance with Halsey, the actions that comprised the substance of its grievance clearly arose before the expiration of the CBA and thus were covered by the terms of the CBA."). Cf. Winery, Distillery and Allied Workers, Local 186 v. Guild Wineries ?, 812 F. Supp. 1035, 1037 (N.D. Cal. 1993) ("The collective bargaining agreement in this case expired more than two years before the dispute arose. Thus, as in Litton, the arbitration clause only applies if the grievance involves 'rights which accrued or vested under the Agreement, or rights which carried over after expiration of the Agreement, not as legally imposed terms and conditions of employment but as continuing obligations under the contract.'") (quoting Litton, 111 S. Ct. at 2227).

Furthermore, to the extent that a post-expiration grievance must be asserted within a reasonable time after its discovery in the absence of evidence of abuse, of which there is none apparent here, the Court finds the duration to be reasonable. See R.J. Corman Derailment Servs., LLC v. Int'l Union of, 422 F.3d 522, 528 (7th Cir. 2005). In the present case, the demand for arbitration occurred a mere four months after the expiration of the CBA, and the dispute concerned payments that were allegedly owed only months prior.

Therefore, the Court finds the agreement to arbitrate contained in the 2008 CBA to be valid and enforceable.

   2. **As to the Scope of the Arbitration Clause**

Now that the Court has found the 2008 CBA and the agreement to arbitrate to be valid, the Court must examine the scope of the arbitration clause to determine if it is broad or narrow.

See Concourse Vill., Inc. v. Local 32E, Serv. Employees Intl Union, AFL-CIO, 822 F.2d 302, 304 (2d Cir. 1987); Atlas Tile & Marble Works, Inc. v. Hart, No. 90 Civ. 2847, 1990 WL 180547, at *3 (S.D.N.Y. Nov. 14, 1990) (citing Emery Air Freight Corp. v. Local Union, 295, 786 F.2d 93, 97 (2d. Cir. 1986)). A broad clause "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." Oldryd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998). Subsequently, the Court must decide whether the particular grievance falls within the scope of the arbitration clause. If the grievance is covered by the contract, the role of this Court ends and the matter is one for arbitration.

Jillian does not contend that the instant dispute would not be governed by the arbitration clause contained in the 2008 CBA. Indeed, the scope of the arbitration clause at issue is quite broad. Article 8 entitled "Adjustment of Disputes", begins as follows:

> All disputes, complaints, controversies, claims and grievances arising between the Employer [Jillian] and the Union [Local 355], or any group of employees covered by this Agreement with respect to, concerning or growing out of the interpretation, operation, application, performance or claimed breach of any of the terms and conditions of this Agreement shall be adjusted in accordance with the following procedure . . .

This all-inclusive arbitration clause is broad for purposes of deciding arbitrability. See, e.g., Rumelt v. Bromley Coats Inc., No. 98 Civ. 5547, 1998 WL 851512, at *2 (S.D.N.Y. Dec. 8, 1998) (defining analogous phraseology as "most sweeping" and "comprehensive"); see also Googla Home Décor LLC v. Uzkiy, No. 09 Civ. 1049, 2009 WL 2922845, at *4 (E.D.N.Y. Sept. 8, 2009) (observing that a clause submitting to arbitration "any claim or controversy arising out of or relating to the agreement" is emblematic of a broad arbitration clause). When the arbitration clause is broad enough that it includes disputes "of any nature or character" or "any and all disputes," all questions or disputes arising thereunder are within the exclusive jurisdiction

of an arbitrator. See Consolidated Rail Corp. v. Metro. Transp. Auth., No. 95 Civ. 2142, 1996 WL 137587, at *5 (S.D.N.Y. Mar. 22, 1996).

### 3. As to Whether the Dispute Falls Within Arbitration Clause

With regard to the last relevant inquiry, the Court finds that the arbitration clause is sufficiently broad by way of the "all disputes" phrase. Since there is a broad arbitration agreement, there is a presumption of arbitrability, which is overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Duane Street Assocs. v. Local 32B–32J, No. 00 Civ. 3861, 2000 WL 802889, at *2 (S.D.N.Y. June 21, 2000) (quoting WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)). The instant dispute among the parties is inextricably linked to the terms and conditions of the agreement, in particular Article 14 of the 2008 CBA. Article 14 states in relevant part:

> Commencing on the sixty-first (61st) day of employment for each employee, for each hour paid to each employee, the Employer shall make contributions in the amount of 0.80 cents per hour paid for each unit employee to the Local 355, United Service Workers, IUJAT, Joint Apprenticeship and Training Fund ("Apprenticeship Fund").

(See Exhibit B.) The parties, by mutual consent, created a detailed process in which disputes of this kind would be adjudicated. Thus, it is not for this Court but rather the arbitrator to hear and dispose of this matter.

Jillian claims that Local 355 did not follow the proper procedure governing disputes pursuant to Article 8 of the CBA. (See Mem. in Opposition at 5.) However, even if the Court assumes the truth of this allegation, it is not a decision for this Court. See John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909 11 L. Ed. 2d 898 (1964) ("[o]nce it has been determined . . . that the parties are obligated to submit the subject matter of a dispute to

15

arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator"); Lockport Mem. Hosp. v. United Prof. Nurses Assoc., No. 02 Civ. 0770, 2004 WL 1445722, at *5 (W.D.N.Y. June 25, 2004) ("whether the procedures for advancing a grievance to arbitration have been complied with is a determination to be made by the arbitrator, not the court."); United Paperworkers Intern. Union v. Boise Cascade Corp., 758 F. Supp. 954, 958 (D. Vt. 1991) ("In addition, the issue of whether UPI's failure to follow the grievance procedure barred arbitration is a question of 'procedural arbitrability' that should be submitted to the arbitrator.").

The Second Circuit has determined that all procedural defenses, even those which are not factually related to the merits of the underlying dispute, must be decided in arbitration. Rochester Tele. Corp. v. Commn's Workers of Am., 340 F.2d 237, 239 (2d. Cir. 1965); see also Dry Harbor HRF Inc. v. Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU/AFL-CIO, No. 87 Civ. 3444, 1988 WL 8615, at *3 (E.D.N.Y. Jan. 15, 1988) ("Prior to arbitration, a court's role is severely circumscribed; it can only undertake two inquiries: whether or not the company was bound to arbitrate and what issues must it arbitrate. . . . Questions concerning the procedural prerequisites to arbitration, however, are to be decided by the arbitrator.").

Jillian cites two New York cases supporting its bid to stay arbitration. See M.I.F. Secs. Co. v. R.C. Stamm & Co., 94 A.D.2d 211, 463 N.Y.S.2d 771 (1st Dep't 1983); E. Ramapo Cent. Sch. Dist. v. Symanski, 90 A.D.2d. 821, 456 N.Y.S.2d 22 (2d Dep't 1982). In Symanski, the petitioner sought a stay of arbitration, arguing that the collective bargaining agreement only provided for arbitration by the association. Symanski, 463 N.Y.S.2d at 821. The Appellate Division reversed the trial court's denial of a stay of arbitration because the respondent, rather

16

than the association, sought arbitration in violation of the terms of the agreement. Id. at 822. Unlike Symanski, the 2008 CBA between the Respondents and Jillian expressly provided for both parties to seek arbitration arising from any dispute. (See Ex. B ("All disputes, complaints, controversies, claims and grievances arising between the Employer and the Union, or any group of employees covered by this Agreement . . . shall be adjusted in accordance with the following procedure. . . .").) Thus, Symanski does not support the Petitioners' position.

Similarly, in M.I.F. Securities Co., the petitioner was a member of the American Stock Exchange who had agreed to arbitrate disputes only with entities expressly set forth in the arbitration provisions of the American Stock Exchange Constitution, which did not include Stamm, the Respondent. M.I.F. Securities Co., 463 N.Y.S. 2d. at 213. Here, once again, it is clear that the 2008 CBA, notwithstanding challenges to its validity, included an arbitration provision binding the two parties. Therefore, the Court finds that the cases cited by Jillian are inapplicable and unpersuasive.

### C. As to Whether the Respondent is Entitled to Attorneys' Fees and Costs

As a final issue, the Respondents point to Article 15(q) of the 2008 CBA, which binds Jillian to all of the terms and conditions contained in the JATF Trust Agreement that created and governed the Respondent funds. (Exhibit C.) The Trust Agreement provides as follows:

> When the Fund undertakes proceedings to recover Employer contributions, there are administrati[ve] burdens, financial burdens, and reallocation of staff resources which are damages which are difficult to quantify. Thus, where the Fund institutes an action to recover Employer contributions, such Employer is liable for the following: (i) the unpaid contributions, (ii) legal rate of interest on the unpaid contributions, (iii) an amount equal to either (a) the legal rate of interest on the unpaid contributions, or (b) liquidated damages in the amount of 20% of the contributions due, (iv) *reasonable attorney's fees and costs of the action*, and (v) all costs of collection including but not limited to fees incurred for auditing in connection with determining delinquent status.

17

(Exhibit C, at ¶ 2) (emphasis added). Thus, the Respondents request that the Court award them reasonable attorneys' fees and costs that were incurred in the defense of the present case. The Petitioner does not address in its papers as to whether it is liable for all costs of collection.

In order to properly determine whether the Respondents are entitled to "reasonable attorney's fees and costs" of an action instituted to recover employer contributions, this would necessarily require this Court to interpret the terms of the CBA and, because they are incorporated by reference, also the terms of the Trust Agreement. As set forth above, "[h]aving found a dispute to be arbitrable, the court, with limited exceptions, has no power to . . . interpret the collective bargaining agreement . . ." Botica v. Floyd Steel Erectors, Inc., 485 F. Supp. 334, 339 (N.D. Ill. 1980). The broadly worded arbitration clause states that "[a]ll disputes, complaints, controversies, claims and greievances" arising between the parties "with respect to, concerning or growing out of the . . . terms and conditions of this Agreement" are subject to arbitration. Thus, the parties have agreed to mandatory arbirtration for any claim arising out of the CBA. The issue of attorneys' fees and costs falls squarely within the arbitration clause and is a matter for the arbitrator, not the Court, to decide.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Respondents' motion to dismiss the complaint is granted; and it is further

**ORDERED,** that the Respondents' request for attorneys' fees and costs is denied without prejudice; and it is further

**ORDERED**, that the Clerk of the Court is directed to mark this case as closed.

18

**SO ORDERED.**
Dated: Central Islip, New York
June 21, 2012

                                                             ____*/s/ Arthur D. Spatt*____
                                                            ARTHUR D. SPATT
                                                     United States District Judge